UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>                v.<br><br>HOME BUYERS CONSULTING NETWORK, INC., also doing business as HOME BUYERS NETWORK, GOOD CREDIT COMPANY, GOODCREDIT.COM, and 0DOWNHOMEBUYERS.COM, a North Carolina corporation, and<br><br>DOUGLAS ANDERSEN MOORE, also known as DOUGLAS A. MOORE, individually and as an officer of Home Buyers Consulting Network, Inc.,<br><br>    Defendants. | ECF CASE<br><br>Case No. 08 Civ. 4502<br><br>COMPLAINT FOR CIVIL PENALTIES, CONSUMER RESTITUTION, PERMANENT INJUNCTION, AND OTHER EQUITABLE RELIEF |

       Plaintiff, the United States of America, acting upon notification and authorization to the Attorney General by the Federal Trade Commission ("FTC" or "Commission"), for its Complaint alleges:

       1.     Plaintiff brings this action under Sections 5(a)(1), 5(m)(1)(A), 13(b), 16(a) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a)(1), 45(m)(1)(A), 53(b), 56(a)(1) and 57b, and Section 410(b) of the Credit Repair Organizations Act, 15 U.S.C. § 1679(h), to obtain monetary civil penalties, injunctive relief, rescission of contracts, restitution, disgorgement and other equitable relief for Defendants' deceptive acts or practices in connection

1

with the sale and offering for sale of credit repair services in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the Credit Repair Organizations Act, 15 U.S.C. § 1679 *et seq*.

## JURISDICTION AND VENUE

2.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337(a), 1345 and 1355, and pursuant to 15 U.S.C. §§ 45(m)(1)(A) and 1679h(b)(2). This action arises under 15 U.S.C. §§ 45(a)(1) and 1679h(b).

3.   Venue in the United States District Court for the Southern District of New York is proper under 28 U.S.C. §§ 1391 and 1395(a), and 15 U.S.C. § 53(b).

## DEFENDANTS

4.   Defendant Home Buyers Consulting Network, Inc., also d/b/a Home Buyers Network, Good Credit Company, GoodCredit.com and 0downhomebuyers.com, ("HBCN") is a North Carolina corporation with its offices and principal place of business at 6521 Meridian Drive, Suite 107, Raleigh, North Carolina 27616.  Defendant HBCN transacts or has transacted business in this district and throughout the United States.

5.   Defendant Douglas Andersen Moore, a/k/a Douglas A. Moore ("Moore"), is the President, Chief Executive Officer, Secretary and majority shareholder of Defendant HBCN.  At all times material to this Complaint, acting alone or in concert with others, Defendant Moore has formulated, directed, controlled, or participated in the acts and practices of Defendant HBCN, including the acts and practices set forth in this Complaint.  Defendant Moore transacts or has transacted business in this district and throughout the United States.

## COMMERCE

6.   At all times relevant to this Complaint, Defendants have maintained a substantial

course of trade, in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

### DEFENDANTS' BUSINESS PRACTICES

7.      Since at least September 2002, and continuing thereafter, Defendants have advertised, promoted, offered for sale, and sold credit repair services to consumers across the United States, alone and in conjunction with home-buying consulting services. Defendants advertised and continue to advertise their services on the following two Internet websites: www.GoodCredit.com (focus on credit repair), and www.0downhomebuyers.com (focus on home-buying). Defendants' GoodCredit website promotes Defendants' credit repair services as follows:

> Our program offers the ability to **REPAIR, RESTORE** or **ESTABLISH** your credit so that you may be able to qualify for *100% home financing, lower interest rates and better quality credit.* [emphasis in original]

8.      Defendants also market their credit repair services via inbound and outbound telemarketing. Defendants receive inbound telemarketing calls from consumers who are directed to them by a third-party company that advertises and sells lists of foreclosed properties. After paying this third-party company a fee, consumers are told that they can call Defendants if they need credit repair or access to specialists in zero or low down-payment financing. Defendants also make outbound calls to consumers using leads from this third-party company.

9.      Defendants have offered credit repair services purporting to remove or attempt to remove negative or derogatory information from, or improve, consumers' credit histories, credit records, and credit ratings. Specifically, Defendants' promise consumers a 50 point or higher

3

increase in their credit score, or removal of at least six negative or derogatory items from their credit report, through the following claims:

> WE DO HAVE A CREDIT REPAIR PROGRAM THAT WILL HELP INCREASE YOUR CREDIT SCORE 50 TO 100 POINTS IF NEEDED TO MAKE SURE WE CAN GET YOU INTO A HOME....
>
> ***
>
> Q: [D]o you guarantee that, you know, derogatory information can be taken off?
> HBCN:  Yeah, it's a money back guarantee.  We guarantee to increase your credit score by 50 to 100 points or delete six derogatory items.

HBCN makes these promises both in pitches for its credit repair services alone, and in conjunction with pitches for its home-buying consulting services, in which HBCN promises to improve consumers' credit scores so that they can buy a home.

10. As part of Defendants' home-buying consulting services, Defendants promise consumers help with finding a home to buy, through a referral to Defendants' purported network of realtors and lenders who specialize in securing zero or low-cost financing, with the seller paying the closing costs.  Defendants also represent that, through their services, a consumer may be able to secure between 95% and 100% financing of the cost of a home.

11. Before performing the promised credit repair services, Defendants' representatives typically request and require at least partial payment for those services, specifically, advance payment of at least $99 for the pure credit repair services and $399 for the bundled credit repair and home-buying consulting services.  Defendants also request and require additional weekly or monthly advance payments for credit repair services, typically ranging from

$19 per week to $49 per month, all before performing the promised credit repair services.

12. Defendants' representatives promise to refund all but a purported "processing fee" or "case set-up fee" of $99 to consumers if they do not receive the promised results from Defendants' services, provided that the consumers work with Defendants for a set period of time, ranging from six months to one year.

13. Defendants claim to be able to remove accurate, negative information from consumers' credit reports permanently, including bankruptcies and past due bills. To induce consumers to purchase Defendants' services, Defendants' representatives make statements such as the following:

> Q: [W]hat about bankruptcy, can you delete -- you know, get rid of bankruptcy information from my credit report?
> HBCN: Yes, I've seen that information disputed and deleted. There was a woman who used to work here....Well, we found out in 2001 she filed bankruptcy in Ander, North Carolina, in Ander Bankruptcy Court....In 2002, in December, they disputed this information on her credit report. By January of 2003...it was actually disputed and deleted from her report. And then by June, she bought her first home with no money down.

> ***

> HBCN: Through the statute of limitations...everything that's more than four years old can be disputed and removed.
> Q: So, my bankruptcy can be removed then?
> HBCN: I've seen bankruptcies removed. I've seen bankruptcies not only removed from public -- from credit reports, but also from public record.

> ***

> Q: How about on -- how about negative things on my credit report that are supposed to be there? Aren't they going to still affect my qualifications for a mortgage?
> HBCN: Well, not -- we –

5

> Q: I mean, say I have late payments and I really do have late payments?
> HBCN: Yeah. If you really do, you know, that's just something to –
> Q: You can't get rid of those, right? Is that what you're saying?
> HBCN: Basically, what we do is get those items struck so that's not keeping you from obtaining financing in your home, okay?

***

> Do you understand that our warranty is that we guarantee to remove at least six negatives, duplicate or derogatory items from your credit report?

14. Defendants require consumers to sign written contracts for Defendants' services. However, Defendants fail to provide consumers with separate written statements containing specific information on consumers' credit file rights under state and federal law, prior to the time consumers sign their contracts.

15. Defendants also fail to include on their consumer contracts specific statements regarding the consumers' right to cancel the contract without penalty or obligation at any time before the third business day after the date on which the consumer signed the contract.

16. Defendants also fail to provide consumers with a form, having the heading "Notice of Cancellation" and containing in bold face type, language about the three-day right to cancel, and which can be used by consumers to elect to cancel the contract.

## THE CREDIT REPAIR ORGANIZATIONS ACT

17. The Credit Repair Organizations Act took effect on April 1, 1997, and has since that date remained in full force and effect.

18. Defendant HBCN is a "credit repair organization" as that term is defined in the Credit Repair Organizations Act, 15 U.S.C. § 1679(a)(3).

19. The purposes of the Credit Repair Organizations Act are:

> (1) to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services; and (2) to protect the public from unfair or deceptive advertising and business practices by credit repair organizations.

15 U.S.C. § 1679(b).

20. The Credit Repair Organizations Act prohibits credit repair organizations from charging or receiving any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform before such service is fully performed. 15 U.S.C. § 1679b(b).

21. The Credit Repair Organizations Act prohibits all persons from making or using any untrue or misleading representation of the services of the credit repair organization. 15 U.S.C. § 1679b(a)(3).

22. The Credit Repair Organizations Act requires credit repair organizations to provide consumers with a written statement containing prescribed language concerning consumer credit file rights under state and federal law before any contract or agreement between the consumer and the credit repair organization is executed. 15 U.S.C. § 1679c(a).

23. The Credit Repair Organizations Act requires credit repair organizations to include in any contract or agreement for services specific conspicuous statements regarding the consumers' right to cancel the contract without penalty or obligation at any time before the third business day after the date on which the consumer signed the contract or agreement. 15 U.S.C. § 1679d(b)(4).

24. The Credit Repair Organizations Act requires credit repair organizations to

provide consumers with a form which has the heading "Notice of Cancellation" and contains, in bold face type, the required language about the three-day right to cancel, and which can be used by consumers to elect to cancel the contract. 15 U.S.C. § 1679e(b).

25. Pursuant to Section 410(b)(1) of the Credit Repair Organizations Act, 15 U.S.C. § 1679h(b)(1), any violation of any requirement or prohibition of the Credit Repair Organizations Act constitutes an unfair and deceptive act or practice in commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

26. Pursuant to Section 410(b)(2) of the Credit Repair Organizations Act, 15 U.S.C. § 1679h(b)(2), all functions and powers of the FTC under the FTC Act are available to the Commission to enforce compliance with the Credit Repair Organizations Act in the same manner as if the violation had been a violation of any FTC trade regulation rule.

## VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

### COUNT ONE

27. In numerous instances, in connection with their operation as a credit repair organization, as that term is defined in Section 403(3) of the Credit Repair Organizations Act, 15 U.S.C. § 1679a(3), Defendants have charged or received money or other valuable consideration for the performance of services that Defendants have agreed to perform for consumers before such services were fully performed.

28. Defendants have thereby violated Section 404(b) of the Credit Repair Organizations Act, 15 U.S.C. § 1679b(b).

### COUNT TWO

29. In numerous instances, in connection with the advertising, marketing, promotion,

offering for sale, or sale of services for consumers by a credit repair organization, as that term is defined in section 403(3) of the Credit Repair Organizations Act, 15 U.S.C. § 1679a(3), Defendants have made untrue or misleading representations to induce consumers to purchase their credit repair services, including, but not limited to, the representation that Defendants are able to obtain the permanent removal of derogatory information from consumers' credit reports, including bankruptcies, even where such information is accurate and not obsolete.

30. In truth and in fact, in numerous instances, Defendants are unable to obtain the permanent removal of derogatory information from consumers' credit reports, including bankruptcies, even where such information is accurate and not obsolete.

31. Defendants have thereby violated Section 404(a)(3) of the Credit Repair Organizations Act, 15 U.S.C. § 1679b(a)(3).

## COUNT THREE

32. In numerous instances, in connection with their operation as a credit repair organization, as that term is defined in Section 403(3) of the Credit Repair Organizations Act, 15 U.S.C. § 1679a(3), Defendants have failed to provide the written statement of consumer credit file rights under state and federal law required by Section 405(a) of the Credit Repair Organizations Act, 15 U.S.C. § 1679c(a), in the form and manner required by that Act, to each consumer before any contract or agreement between the consumer and Defendants was executed.

33. Defendants have thereby violated Section 405(a) of the Credit Repair Organizations Act, 15 U.S.C. § 1679c(a).

## COUNT FOUR

34. In numerous instances, in connection with their operation as a credit repair

organization, as that term is defined in Section 403(3) of the Credit Repair Organizations Act, 15 U.S.C. § 1679a(3), Defendants have failed to include on their consumer contracts conspicuous statements regarding the consumer's right to cancel the contract without penalty or obligation at any time before the third business day after the date on which the consumer signed the contract.

35. Defendants have thereby violated Section 406(b)(4) of the Credit Repair Organizations Act, 15 U.S.C. § 1679d(b)(4).

## COUNT FIVE

36. In numerous instances, in connection with their operation as a credit repair organization, as that term is defined in Section 403(3) of the Credit Repair Organizations Act, 15 U.S.C. § 1679a(3), Defendants have failed to provide the written "Notice of Cancellation" required by Section 407(b) of the Credit Repair Organizations Act, 15 U.S.C. § 1679e(b), in the form and manner required by that Act, to each consumer before any contract or agreement between the consumer and Defendants was executed.

37. Defendants have thereby violated Section 407(b) of the Credit Repair Organizations Act, 15 U.S.C. § 1679e(b).

## VIOLATION OF SECTION 5 OF THE FTC ACT

38. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits unfair or deceptive acts or practices in or affecting commerce.

39. Misrepresentations or omissions of material facts constitute deceptive acts or practices prohibited by section 5(a) of the FTC Act.

## COUNT SIX

40. In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of credit repair services, Defendants have represented, expressly or by implication, that they are able to obtain the permanent removal of derogatory information from consumers' credit reports, including bankruptcies, even where such information is accurate and not obsolete.

41. In truth and in fact, in numerous instances, Defendants are unable to obtain the permanent removal of derogatory information from consumers' credit reports, including bankruptcies, even where such information is accurate and not obsolete.

42. Therefore, the representation set forth in paragraph 40 is false and misleading and constitutes deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## CONSUMER INJURY

43. Consumers have suffered, and continue to suffer, substantial monetary loss as a result of Defendants' unlawful acts and practices. In addition, Defendants have been unjustly enriched as a result of their unlawful acts and practices. Absent injunctive relief, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public.

## THIS COURT'S POWER TO GRANT RELIEF

44. Defendants have violated the Credit Repair Organizations Act as described above, with knowledge as set forth in Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A).

45. Each instance within five (5) years preceding the filing of this Complaint in which Defendants have violated the Credit Repair Organizations Act, as described above, constitutes a separate violation for which the Plaintiff seeks monetary civil penalties.

46. Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), as modified by Section 4 of the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended, and as implemented by 16 C.F.R. § 1.98(d), authorizes the Court to award monetary civil penalties of not more than $11,000 for each violation of the Credit Repair Organizations Act.

47. Sections 13(b) and 19 of the FTC Act, 15 U.S.C. § 53(b) and 57b, and 410(b) of the Credit Repair Organizations Act, 15 U.S.C. § 1679h(b), empower this Court to grant injunctive and such other relief as the Court may deem appropriate to prevent and redress violations of the FTC Act and the Credit Repair Organizations Act.  This Court, in the exercise of its equitable jurisdiction, may award other ancillary relief, including but not limited to, rescission of contracts and restitution, and the disgorgement of ill-gotten gains, to prevent and remedy injury caused by Defendants' law violations.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, and Section 410(b) of the Credit Repair Organizations Act, 15 U.S.C. § 1679h(b), and this Court's own equitable powers, requests that this Court:

1. Enter judgment against Defendants and in favor of Plaintiff for each and every violation alleged in this Complaint;

2. Enter a permanent injunction to prevent future violations of the Credit Repair Organizations Act and the FTC Act by Defendants;

3. Award Plaintiff monetary civil penalties for each and every violation of the Credit Repair Organizations Act;

4. Award such relief as this Court finds necessary to redress injury to consumers resulting from Defendants' violations of the Credit Repair Organizations Act and the FTC Act, including, but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten gains; and

5. Award Plaintiff the costs of bringing this action, as well as such other and additional relief as this Court may determine to be just and proper.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA
GREGORY G. KATSAS

Acting Assistant Attorney General
Civil Division
U.S. DEPARTMENT OF JUSTICE

MICHAEL J. GARCIA
United States Attorney

Dated: May 14, 2008

_____
PETER SKINNER
peter.skinner@usdoj.gov
Assistant United States Attorney
Southern District of New York
86 Chambers Street
New York, NY 10007
PHONE: (212) 637-2601
FAX: (212) 637-2730

OF COUNSEL:

THOMAS A. COHN
Director
Northeast Region
FEDERAL TRADE COMMISSION

MICHELE STOLLS
NUR-UL-HAQ
Attorneys
Federal Trade Commission
Northeast Region
One Bowling Green, Suite 318
New York, NY 10004
PHONE: (212) 607-2834; 2806
FAX: (212) 607-2822

EUGENE M. THIROLF
Director
Office of Consumer Litigation
KENNETH L. JOST
Deputy Director

_____
KEVIN J. LARSEN
Trial Attorney
Office of Consumer Litigation
U.S. Department of Justice
P.O. Box 386
Washington, D.C. 20044
PHONE: (202) 514-0515
FAX: (202) 514-8742
kevin.larsen@usdoj.gov